IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LATAWNYA DENISE COWAN,

                        **Plaintiff**,

v.

KVC BEHAVIORAL HEALTHCARE,
INC.,

                        **Defendant**.

                                               **Case No. 25-4035-DDC-RES**

## MEMORANDUM AND ORDER

Plaintiff Latawnya Denise Cowan's Complaint tells the story of a grandmother seeking to serve as the kinship care provider for her grandchildren.[1] But a lack of reasonable accommodation for her visual impairment impeded that goal, plaintiff alleges. Specifically, defendant KVC Behavioral Healthcare, Inc. allegedly failed to provide "accessible communication, alternative format forms[,] modifications . . . [and] a qualified neutral scribe" so that plaintiff could participate fully in the kinship-care-provider licensing process. Doc. 1 at 4 (Compl. ¶ III) (quotation cleaned up). Plaintiff thus filed this suit against defendant under the Americans with Disabilities Act—and other federal statutes. Defendant has filed a Motion to Dismiss (Doc. 21). The court grants defendant's motion. But one claim survives nonetheless— plaintiff's Title II ADA claim—because defendant never moved to dismiss it. The court explains its reasoning below. But first, it outlines the governing facts and addresses a procedural wrinkle.

---

[1] Plaintiff proceeds pro se. The court construes her filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 5201 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

## I.    Factual Background

The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [plaintiff], the non-moving party." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1182 (10th Cir. 2025) (quotation cleaned up).

Plaintiff's allegations are brief.  *See* Doc. 1 at 4 (Compl. ¶ III).  Indeed, they are so brief that the court reproduces them—in full—below.

> In May 2022 the Boone County [Missouri] Court ordered the Plaintiff's grandchildren be placed in her care after their mother was arrested for child abuse and neglect.  This was after weeks of home visits from the social worker from the state and request from the children to be placed with Plaintiff.  Plaintiff is vision impaired and requested effective accessible communication, alternative format forms and modifications that would allow her equal access and full participation in the process to get licensed as a kinship care provider for her grandsons.  The Defendants denied the reasonable accommodations, alt format documents and refused to provide a qualified neutral scribe to help with the forms, Plaintiff filed complaint, agency retaliated by cutting all contact with grandchildren refusing services

*Id.* (quotation cleaned up).  Based on these allegations, plaintiff asserts claims under the Americans with Disabilities Act, the Indian Child Welfare Act, the Violence Against Women Act, and the Civil Rights Act.  *Id.* at 3 (Compl. ¶ II.A).[2]  The court evaluates each claim.  Before it can do so, however, it must rule on a procedural issue that implicates which papers the court

---

[2]    The Complaint also lists the "USDHHS ADA and non-discrimination policies" as a federal statute at issue in this case.  Doc. 1 at 3 (Compl. ¶ II.A).  The court's not sure what to make of this language.  USDHHS is an acronym for the United States Department of Health and Human Services—a federal agency.  *See Christopherson v. Poutsch*, No. 14-00152 JCH/SCY, 2015 WL 13662707, at *12 (D.N.M. Apr. 30, 2015) (identifying the United States Department of Health and Human Services as "USDHHS").  ADA is an acronym for the Americans with Disabilities Act.  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 984 (10th Cir. 2019) (identifying the Americans with Disabilities Act as the ADA).  Plaintiff already had listed the ADA separately as a statute at issue.  So, the court doesn't see how prefacing ADA with USDHHS adds a new cause of action to plaintiff's inventory.  In this Order, the court evaluates whether plaintiff states a claim donder the ADA.  It doesn't evaluate any additional claims based on the Complaint's "USDHHS ADA" language.  Doc. 1 at 3 (Compl. ¶ II.A).

will consider.  The court sets the stage for this issue with a brief overview of this case's procedural background.

## II.        Procedural Background

Because plaintiff proceeds in forma pauperis, the court screened her Complaint before service.  *See* Doc 6.  At screening, Magistrate Judge Rachel E. Schwartz addressed just plaintiff's ADA claim—construing it as a Title II claim—and ordered service of process.  *Id.* at 2–5.  Defendant then filed a Motion to Dismiss (Doc. 21).  Plaintiff didn't respond.  Nor did plaintiff file anything at all in the case after May 21, 2025.  *See* Doc. 18 (filing notice of appeal asking Circuit to review the court's denial of plaintiff's request to appoint counsel).  So, the court issued a Show Cause Order on January 26, 2026.  Doc. 30.  It ordered plaintiff to show cause why the court shouldn't dismiss the case for failure to prosecute.  *Id.*  Plaintiff timely—and repeatedly—responded to the Show Cause Order.  *See* Doc. 31; Doc. 32; Doc. 35.  And she filed a Response—albeit a belated one—to defendant's Motion to Dismiss.  Doc. 34.  Defendant then filed a Reply, asking the court to grant its Motion to Dismiss as uncontested given the tardiness of plaintiff's Response.  Doc. 38 at 1.

The court addresses this procedural issue before it turns to the merits of defendant's Motion to Dismiss (Doc. 21).

## III.        Procedural Issue

Defendant asks the court to grant its Motion to Dismiss as uncontested.  Doc. 38 at 1.  It contends the significant untimeliness of plaintiff's Response warrants such treatment.  *Id.*  And it cites D. Kan. Rule 7.1(c), which provides, in relevant part:  "If a response is not filed by the applicable deadline, the court will consider and decide the motion as an uncontested motion."

Plaintiff's Response was late—very late.  Defendant filed its Motion to Dismiss on May 30, 2025.  Doc. 21.  So, plaintiff's Response was due on June 20, 2025.  *See* D. Kan. Rule

6.1(d)(1) ("Responses to [dispositive] motions must be filed within 21 days after the motion is served."). Plaintiff didn't file her Response until February 2, 2026. Doc. 34. That's more than seven months out-of-time. And plaintiff never moved for an extension of time. Plus, she only filed the Response after the court suggested it might dismiss her case. Doc. 30. Plaintiff's pro se status doesn't excuse her untimeliness. *See Merrill Scott & Assocs., Ltd. v. Concilium Ins. Servs.*, 253 F. App'x 756, 763 (10th Cir. 2007) (affirming—under abuse of discretion standard—district court's decision to strike a pro se litigant's summary judgment motion as untimely where he filed the motion "a full three months past the last extension that he requested"); *see Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (explaining that same procedural rules govern pro se and represented litigants alike).

But defendant's proposed course of action—that the court grant its dismissal motion as uncontested—is strong medicine. And it flies in the face of the federal courts' "'strong predisposition to resolve cases on their merits[.]'" *Allen v. Kay Lang*, No. CIV-16-296-RAW, 2017 WL 11578450, at *1 n.1 (E.D. Okla. Mar. 2, 2017) (quoting *Miller v. Dep't of the Treasury*, 934 F.2d 1161 (10th Cir. 1991)). Besides, the Circuit has suggested such an approach doesn't pass muster at the motion-to-dismiss stage. *Persik v. Manpower Inc.*, 85 F. App'x 127, 130 (10th Cir. 2003) ("A district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond. Instead, it 'must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted.'" (quoting *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003)).

The court finds—and takes—a middle path. It won't decide the whole of the case on a procedural issue. But it also won't consider a Response filed more than seven months late. *See, e.g.*, *Morgan v. BJ Servs. Co.*, No. 14-cv-210-SWS, 2015 WL 13545181, at *1 (D. Wyo. Jan. 27,

4

2015) ("Although the Court will not deem Defendants' motion confessed by Plaintiffs, the Court will not consider Plaintiffs' untimely response."); *see also Sartori v. Steider & Assocs.*, No. 15-cv-00991-JCH-LF, 2018 WL 3688480, at *1 (D.N.M. May 23, 2018) ("This response was untimely, and the Court will not consider it."); *Stone v. Simone*, No. 13-cv-00126-SWS, 2014 WL 11357747, at *3 (D. Wyo. July 7, 2014) ("The Court will not consider Plaintiffs untimely response to the Defendants' motion."), *aff'd*, 610 F. App'x 751 (10th Cir. 2015).

So, the court reaches the merits of defendant's motion, but disregards plaintiff's Response. The court turns now to the standard that governs the merits analysis.

## IV.        Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## V.       Analysis

Plaintiff asserts claims under the Indian Child Welfare Act, the Violence Against Women Act, the Civil Rights Act, and the Americans with Disabilities Act. Doc. 1 at 3 (Compl. ¶ II.A). Defendant moves to dismiss all but one of those claims. The court addresses each, in turn.

### A.       Indian Child Welfare Act (ICWA)

Plaintiff's Complaint includes the ICWA in her list of statutes that are at issue in the case. *Id.* Defendant argues for dismissal of the claim with one sentence: "Plaintiff does not even allege in what way [defendant] allegedly violated ICWA or that her grandchildren are members of an Indian tribe." Doc. 22 at 4. Defendant's right. Plaintiff's Complaint is sorely deficient. None of her allegations—though related to foster care—implicate the ICWA.

The Supreme Court recently described how the ICWA interacts with the foster care system.

> In the usual course, state courts apply state law when placing children in foster or adoptive homes. But when the child is an Indian, a federal statute—the Indian Child Welfare Act—governs. Among other things, this law requires a state court to place an Indian child with an Indian caretaker, if one is available. That is so even if the child is already living with a non-Indian family and the state court thinks it in the child's best interest to stay there.

*Haaland v. Brackeen*, 599 U.S. 255, 263–64 (2023). The Court also reiterated the purpose of the ICWA by harkening back to its inception in 1978: "Congress enacted [the ICWA] out of concern that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." *Id.* at

6

265 (quotation cleaned up).  It would seem, then, that one can't state a claim under the ICWA unless one alleges that the child qualifies under the Act—*i.e.*, that "the child is an Indian."  *Id.* at 264.  The statute suggests the same, providing that an "Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding *involving an Indian child*[.]"  25 U.S.C. § 1911(a) (emphasis added).

What's more, the ICWA concerns child custody placement.  As *Haaland* explained, the ICWA "aims to keep Indian children connected to Indian families."  599 U.S. at 265.  But plaintiff's allegations center on the accommodations defendant allegedly denied to her as a vision-impaired individual—not on her grandchildren's placement per se.  *See* Doc. 1 at 4 (Compl. ¶ III).  Failing to allege any facts that would allow the court to infer that the ICWA applies proves fatal to plaintiff's claim.  *See Iqbal*, 556 U.S. at 678 (premising survival of motion to dismiss on whether complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (quotation cleaned up)).  From plaintiff's Complaint, the court can find no cognizable claim under the ICWA.  And so, it dismisses this claim without prejudice.

### B.    Violence Against Women Act

Plaintiff also lists the Violence Against Women Act (VAWA) as a statute at issue in this case.  Doc. 1 at 3 (Compl. ¶ 2.A).  Defendant argues that plaintiff's Complaint is "devoid of any facts" to support a claim under the VAWA.  Doc. 22 at 4.  Specifically, defendant contends, plaintiff never alleges that defendant "commissioned a crime of violence motivated by gender in support of her VAWA claim."  *Id.*  Again, defendant is right.  What's more, even if plaintiff had alleged such violence, it's unlikely she would have a private right of action.

The VAWA provides "protections for persons who have experienced domestic violence, dating violence, sexual assault, and stalking." *Perry v. Encore at Boulevard One LLC*, No. 23-cv-02188-GPG-SBP, 2025 WL 977680, at *10 (D. Colo. Mar. 9, 2025), *report and recommendation adopted*, , 2025 WL 977704 (D. Colo. Mar. 28, 2025), *aff'd*, No. 25-1128, 2026 WL 636754 (10th Cir. Mar. 6, 2026). But "the provisions of the Violence Against Women Act that gave victims of gender-motivated violence a civil cause of action for damages against their abuser or attacker were held unconstitutional by the Supreme Court in 2000." *Merrill v. Ito*, No. 23-cv-00508-JNP-JCB, 2023 WL 6880557, at *5 (D. Utah Oct. 18, 2023) (citing *United States v. Morrison*, 529 U.S. 598 (2000)); *Webster v. Fairway Mgmt., Inc.*, No. 22-cv-239-JFH, 2025 WL 3017431, at *7 (N.D. Okla. Oct. 28, 2025) ("[I]t is well established that VAWA's private right of action has been struck down by the Supreme Court."). However, the "most recent reauthorization of [the] VAWA does create a private right of action for individuals whose intimate visual images are disclosed without their consent, allowing a victim to recover damages and legal fees." *Perry*, 2025 WL 977680, at *10 n.9 (citing 15 U.S.C. § 6851(b)(1)(A)).

Plaintiff's Complaint here never alleges that she has experienced domestic violence, dating violence, sexual assault, or stalking. *See generally* Doc. 1. Indeed, the crux of the dispute here turns on visual impairment and the need for accessible formatting. More importantly, even if plaintiff had alleged such conduct, she likely wouldn't have a cause of action. The reauthorized VAWA provides a private right of action for narrow circumstances only—*i.e.*, conduct involving disclosure of intimate visual images. And plaintiff makes no mention of visual images, much less intimate ones, in her Complaint. *See generally id.* As one court aptly concluded: "The Complaint contains no well-pleaded facts indicating the remotest possibility that Defendants engaged in any such conduct; indeed, based on the pleading, the idea that any

8

Defendant violated VAWA is in no way plausibly alleged and is, quite simply, utterly

*implausible*." *Perry*, 2025 WL 977680, at *10 (emphasis in original).  As the saying goes, so

too, here.  The court thus dismisses plaintiff's claim premised on the VAWA.

### C.    Civil Rights Act

The Civil Rights Act also makes an appearance in plaintiff's inventory of federal statutes

involved.  Doc. 1 at 3 (Compl. ¶ II.A).  In its bid to dismiss this claim, defendant argues that

plaintiff never alleges she's "a member of a protected class under the Civil Rights Act[.]"  Doc.

22 at 4.  Nor, defendant contends, does plaintiff clarify "under which title she is making her

claim."  *Id.*

Exercising its liberal-construction muscles, the court's best guess is that plaintiff intends

to assert a Title VI claim.  It so concludes based on two clues in plaintiff's Complaint.  *First*, the

"Relief" section asserts that plaintiff seeks—among other things—any "damages awarded by [a]

jury for . . . discrimination-as Defendants receive state and federal financial assistance[.]"  Doc. 1

at 4 (Compl. ¶ IV) (quotation cleaned up).  Plaintiff's emphasis on defendant's federal funding

suggests a Title VI claim.  Indeed, she uses a precise Title VI phrase—"federal financial

assistance[.]"  *Id.*; *see* 42 U.S.C. § 2000d (prohibiting "discrimination under any program or

activity receiving Federal financial assistance").  *Second*, plaintiff's allegations contemplate a

retaliation claim.  She alleges that defendant denied her reasonable accommodation for her visual

impairment.  Doc. 1 at 3 (Compl. ¶ III).  And then, she filed a complaint with the agency.  *Id.*

After that, plaintiff alleges, the "agency retaliated by cutting all contact with grandchildren

refusing services[.]"  *Id.* (quotation cleaned up).  Title VI permits a retaliation claim.  *See*

*McDaniel v. Dominium Mgmt. Servs., LLC*, No. 21-cv-01997-RMR-NYW, 2022 WL 1316384,

at *3 (D. Colo. May 3, 2022) ("[A]lthough Title VI does not explicitly create a claim for

9

retaliation, courts have held that such a cause of action exists."), *report and recommendation adopted*, 2022 WL 20440201 (D. Colo. June 15, 2022). Having concluded plaintiff asserts a Title VI claim, the court, next, addresses defendant's dismissal arguments under that title of this act.

Title VI prohibits discrimination based on race, color, or national origin in any federally funded program or activity. 42 U.S.C. § 2000d. "To state a claim of discrimination under Title VI, a plaintiff must allege facts establishing that (1) the defendant discriminated against the plaintiff on the basis of race, color, or national origin, and (2) the entity engaging in discrimination is receiving federal financial assistance." *McDaniel*, 2022 WL 1316384, at *3 (citing *Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993)). "A prima facie cause of discrimination is met by establishing (1) membership in a protected class; (2) an adverse action; and (3) disparate treatment amongst similarly situated individuals." *Id.* (citing *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)).

Here, defendant points to the "membership in a protected class" requirement and asserts "Insufficient." Doc. 22 at 4. Defendant's not wrong. Plaintiff never alleges membership in a protected class. *See generally* Doc. 1. But that's not the only Title VI pleading deficiency. Plaintiff also hasn't alleged similarly situated individuals or disparate treatment. *See generally id.* And that's a problem. Our Circuit has clarified that "while specific facts are not necessary, some facts are." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (quotation cleaned up). Here, there's simply no facts. "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). So, the court dismisses plaintiff's Civil Rights Act claim as insufficiently pleaded.

10

### D.    Americans with Disabilities Act (ADA)

Finally, plaintiff asserts a claim under the ADA.  Doc. 1 at 3 (Compl. ¶ II.A).  As with her other claims, plaintiff doesn't make it clear which title of this act she's invoking for her claim.  *See generally id.*  But the court and defendant have raised the possibility that plaintiff asserts an ADA claim under two titles:  Title II and Title III.  Title II protects disabled individuals from discrimination by public entities.  42 U.S.C. § 12132.  Title III protects disabled individuals from discrimination by public accommodations.  *Id.* § 12182.

In her screening Order, Magistrate Judge Schwartz construed plaintiff's ADA claim as one arising under Title II.  Doc. 6 at 2.  And she suggested that the court "would benefit from a responsive pleading or motion from Defendant that provides a more developed record to evaluate Plaintiff's [ADA] claim[.]"  *Id.*  Despite the court's prompting, defendant's motion never addresses the viability of a Title II claim.  *See generally* Doc. 22.  Nor does it address Judge Schwartz's implicit question about defendant's status as a public entity.  *Compare* Doc. 6 at 3–5 (explaining that our Circuit has determined public entity status by considering "a number of facts specific to the entity at issue" and repeatedly referencing the "limited present record") *with* Doc. 22 (never using the phrases "public entity" or "Title II" to argue for dismissal—or at all).  In lieu of engaging with the problems noted in Judge Schwartz's Order, defendant construes plaintiff's ADA claim as a Title III claim.  Doc. 22 at 3.  The court thus addresses claims under both Title II and Title III, below.

#### 1.    Title II

Start with the easy one—Title II.  Defendant never moved to dismiss an ADA Title II claim.  So, it survives.  *See Sullivan v. Unified Sch. Dist. No. 512*, No. 24-2491-DDC-BGS, 2025 WL 2732589, at *8 (D. Kan. Sept. 25, 2025) (holding claim survives where defendants don't

move to dismiss it); *Mbaku v. Bank of Am., Nat. Ass'n*, No. 12-cv-00190-PAB-KLM, 2013 WL 425981, at \*10 (D. Colo. Feb. 1, 2013) (same).

Now, the Title III claim.

### 2.    Title III

"To state a claim under Title III of the ADA, a plaintiff must" plead the following elements: "(1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Crossett v. Lakeview Hosp.*, No. 25-cv-00061-DAK-CMR, 2026 WL 403551, at \*3 (D. Utah Jan. 21, 2026) (quotation cleaned up), *report and recommendation adopted*, 2026 WL 396717 (D. Utah Feb. 12, 2026).  The statute defines what qualifies as discrimination under the third element, including "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]"  42 U.S.C. § 12182(b)(2)(A)(ii).

Defendant argues that plaintiff's pleading is deficient under the second and third elements outlined above.  *First*, defendant asserts, plaintiff "has failed to demonstrate that [defendant] is a private entity that owns, leases, or operates a place of public accommodation[.]"  Doc. 22 at 4. *Second*, defendant argues that plaintiff doesn't "demonstrate . . . that she was deprived of the full and equal enjoyment of [defendant's] services[.]"  *Id.*  Perhaps defendant's arguments are right, but there's a bigger problem with plaintiff's Title III claim—and its dispositive.  Title III doesn't permit the relief that plaintiff requests.

Plaintiff seeks money damages.  Doc. 1 at 4 (Compl. ¶ IV) (seeking $500,000 and punitive damages).  She never asks for injunctive relief.  *See generally id.*  But "monetary relief

12

is not available to private litigants under Title III of the ADA." *Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010). That's one of the differences between Title II and Title III. *Tyler v. City of Manhattan*, 118 F.3d 1400, 1413 (10th Cir. 1997) (Jenkins, J., dissenting) (explaining legislative history demonstrating that "under the public accommodations provisions of title III, the [ADA] expressly limits relief to equitable remedies" but "title II of the act, covering public services, contains no such limitation" (quotation cleaned up)). Under Title II, "Congress intended the disabled to have a private right of action . . . that would include the full panoply of remedies." *Id.* (quotation cleaned up). But under Title III "a private individual may only obtain injunctive relief[.]" *Lewis*, 361 F. App'x at 938 n.1 (quotation cleaned up). And our Circuit has affirmed a district court's dismissal with prejudice of a Title III claim for money damages. *Id.* So, the court finds this an independently sufficient reason provides a fulsome rationale for dismissing plaintiff's Title III ADA claim. And it dismisses that claim with prejudice.

## VI.       Conclusion

The court dismisses plaintiff's ICWA, VAWA, and Civil Rights Act claims without prejudice for failure to state a claim. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice"). The court dismisses plaintiff's Title III ADA claim with prejudice as precluded by her bid for money damages. But defendant didn't move to dismiss plaintiff's Title II ADA claim, so it survives.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 21) is granted. All contested claims are dismissed. Plaintiff's Title II ADA claim survives as uncontested.

**IT IS SO ORDERED.**

**Dated this 31st day of March, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
